# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 7421 | DATE | JUNE 14, 2002 |
| CASE TITLE | JOANN ALEK v. UNIVERSITY OF CHICAGO HOSPITALS | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]    Plaintiff's motions (a) for relief from judgment or order filed 11/29/2001 [59-1] (b) to quash defendant's memorandum of law in support of its motion for summary judgment [67-1] and (c) for summary judgment [60-1] are denied.  Defendant's motion to strike various documents filed by plaintiff on 2/20/02 [73-1] is denied.  Defendant's motion for summary judgment [64-1] is granted.  The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 17 2002 | 74 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | SB | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/14/2002 | |
| | | | date mailed notice | |
| cw | courtroom deputy's initials | | mqm | |
| | | | mailing initials | |

U.S. DISTRICT COURT
CLERK
02 JUN 14 PM 5:06

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
JUN 1 7 2002

JOANN ALEK,                          )
                                     )
                 Plaintiff,          )
                                     )
        v.                           )        No. 99 C 7421
                                     )
UNIVERSITY OF CHICAGO HOSPITALS,     )
                                     )
                 Defendant.          )

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Joann Alek alleges that her
former employer, defendant University of Chicago Hospitals,
discriminated against her and denied accommodations in violation
of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101
et seq. Presently pending are the parties' cross motions for
summary judgment.[1]

On a motion for summary judgment, the entire record is
considered with all reasonable inferences drawn in favor of the
nonmovant and all factual disputes resolved in favor of the
nonmovant. Schneiker v. Fortis Insurance Co., 200 F.3d 1055,
1057 (7th Cir. 2000); Baron v. City of Highland Park, 195 F.3d
333, 337-38 (7th Cir. 1999). The burden of establishing a lack
of any genuine issue of material fact rests on the movant.

---

[1]Defendant provided plaintiff with the required notice
when the party opposing summary judgment is a pro se litigant.

Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999); Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which she or it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Shank v. William R. Hague, Inc., 192 F.3d 675, 681 (7th Cir. 1999); Wintz v. Northrop Corp., 110 F.3d 508, 512 (7th Cir. 1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of
> directing the district court to the determinative
> issues and the available evidence that pertains
> to each. "[A] party seeking summary judgment
> always bears the initial responsibility of
> informing the district court of the basis for
> its motion, and identifying those portions
> of 'the pleadings, depositions, answers to
> interrogatories, and admissions on file, together
> with the affidavits, if any' which it believes
> demonstrate the absence of a genuine issue of
> material fact." Celotex Corp. v. Catrett, 477
> U.S. 317, 323 (1986); id. at 325 ("the burden on
> the moving party may be discharged by 'showing'--

that is, pointing out to the district court--that
there is an absence of evidence to support the
nonmoving party's case"). Then, with respect to
issues that the non-moving party will bear the
burden of proving at trial, the non-moving party
must come forward with affidavits, depositions,
answers to interrogatories or admissions and
designate specific facts which establish that
there is a genuine issue for trial. Id. at
324. The non-moving party cannot rest on the
pleadings alone, but must designate specific
facts in affidavits, depositions, answers to
interrogatories or admissions that establish that
there is a genuine triable issue. Id. The
non-moving party "must do more than simply show
that there is some metaphysical doubt as to the
material facts." Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586 (1986).
"The mere existence of a scintilla of evidence
in support of the [non-moving party's] position
will be insufficient; there must be evidence on
which the jury could reasonably find for the
[non-moving party]." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 252 (1986).

Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

In addition to each party's summary judgment motions,

each party has filed a motion to quash or strike documents filed

by the other party. Defendant moves to strike plaintiff's

response to defendant's response to plaintiff's statement of

uncontested facts [in] support of plaintiff's motion for summary

judgment [70],[2] questionable medical opinions [71], motion to

quash [67], and response to defendant's motion for summary

judgment [66]. Defendant contends these documents are

---

[2]The bracketed numbers are the numbered docket entry for
each document.

repetitive, inconsistent with Local Rule 56.1,[3] without proper evidentiary support for factual assertions, and supported by declarations that contradict prior deposition testimony. The various briefs and other documents filed by plaintiff generally are rambling, choppy, disjointed, repetitive, and otherwise difficult to read and comprehend. However, plaintiff is a <u>pro se</u> litigant who is entitled to a liberal construction of her pleadings.[4] While plaintiff still must present sufficient and admissible evidence in support of her claims, the presentation itself will not be strictly limited or construed. None of plaintiff's documents will be stricken, but only admissible evidence will be considered in determining whether a genuine factual dispute exists. Also, absent a sufficient explanation for the change, plaintiff may not support a genuine factual dispute with an affidavit or declaration that contradicts prior deposition testimony. <u>See</u> <u>Piscione v. Ernst & Young, L.L.P.,</u> 171 F.3d 527, 532-33 (7th Cir. 1999); <u>Patterson v. Chicago</u>

---

[3]One complaint of defendant is that plaintiff replied to its Local Rule 56.1(b)(3)(A) statement. While Local Rule 56.1 does not require such a reply; it also does not prohibit it. Moreover, such a reply is useful to the court and parties and within the spirit of Local Rule 56.1's purpose of focusing and making clear the parties' factual contentions on summary judgment. This reply is not a violation of Local Rule 56.1.

[4]While plaintiff's contentions and presentation will be liberally construed, this is not the same as the liberal construction of a <u>pro se</u> complaint, a rule that plaintiff repeatedly cites. On summary judgment, plaintiff must present specific facts supported by admissible evidence, not just allegations of a complaint.

<u>Association for Retarded Citizens</u>, 150 F.3d 719, 724 (7th Cir. 1998).  Further, the court will exercise its discretion in not enforcing strict compliance with Local Rule 56.1.  <u>See</u> <u>Bordelon v. Chicago School Reform Board of Trustees</u>, 233 F.3d 524, 527 (7th Cir. 2000); <u>Dade v. Sherwin-Williams Co.</u>, 128 F.3d 1135, 1140 (7th Cir. 1997); <u>Ogborn v. United Food & Commercial Workers, Local No. 881</u>, 2000 WL 1409855 *2-3 (N.D. Ill. Sept. 25, 2000); <u>Thompson v. Chicago School Reform Board of Trustees</u>, 1999 WL 258488 *2 (N.D. Ill. April 13, 1999).  While the court primarily looks to the parties' Rule 56.1 statements in determining whether a genuine factual dispute exists, it has also been considered whether plaintiff's briefs contain references to sufficiently supported factual contentions.[5]  Additionally, plaintiff is not qualified as a medical expert.  Her own testimony expressing medical opinions (<u>e.g.</u>, her opinion as to medical causation), her own citations to medical literature, and her medical diagrams are not admissible evidence.  She can provide testimony as to her actual condition (<u>e.g.</u>, her subjective experience of pain or limitations) or background considered in medical reports (<u>e.g.</u>, when she worked or when she was engaging in weight training).  <u>See</u> Fed. R. Evid. 701, 702; <u>Goffman v. Gross</u>, 59 F.3d 668, 672 (7th Cir. 1995); <u>Walker v.</u>

---

[5]Additionally, the Rule 56.1 statements filed with plaintiff's motion for summary judgment have been considered in determining whether a genuine factual dispute exists that would defeat defendant's summary judgment motion.

Shansky, 28 F.3d 666, 672 (7th Cir. 1994); Franklin v. Shelton, 250 F.2d 92, 97 (10th Cir. 1957), cert. denied, 355 U.S. 959 (1958); Villalba v. Consolidated Freightways Corp. of Del., 2000 WL 1154073 *4-5 (N.D. Ill. Aug. 14, 2000); Ichile v. City of Chicago, 2000 WL 1161078 *2 (N.D. Ill. Aug 16, 2000).

Similarly, plaintiff moves to quash defendant's response to her motion for summary judgment on the ground that it contains contentions that are not in compliance with Fed. R. Civ. P. 56 and Local Rule 56.1. Defendant's response will not be quashed. To the extent it contains insufficiently supported contentions, those contentions would not be credited and a genuine factual dispute would not be found to exist.

A person claiming discrimination in violation of the ADA must first bring an administrative charge within 300 days of the occurrence. See 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e)); National R.R. Passenger Corp. v. Morgan, 122 S. Ct. ____, 2002 WL 1270268 *5 (June 10, 2002); Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 574 (7th Cir. 1998). Generally, a lawsuit claiming employment discrimination will be limited to those claims included in the administrative charge. McKenzie v. Illinois Department of Transportation, 92 F.3d 473, 481 (1996). The lawsuit, however, may also include claims "that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" Id. (quoting Jenkins v. Blue Cross Mutual Hospital Insurance, Inc., 538 F.2d 164, 167

(7th Cir.) (en banc), cert. denied, 429 U.S. 986 (1976)).
"[T]his standard is met 'if there is a reasonable relationship
between the allegations in the charge and the claims in the
complaint, and the claim in the complaint can reasonably be
expected to grow out of an EEOC investigation of the allegations
in the charge. . . . The claims are not alike or reasonably
related unless there is a factual relationship between them.
This means that the EEOC charge and the complaint must, at
minimum, describe the same conduct and implicate the same
individuals." Id. (quoting Cheek v. Western & Southern Life
Insurance Co., 31 F.3d 497, 501 (7th Cir. 1994)).

It is undisputed that plaintiff filed her administrative
charge on March 26, 1999. The only allegations expressly
contained in the charge concern the denial of positions applied
for in January 1999 and the failure to provide an accommodation
for the testing that was part of the application process. These
are discrete claims. Even if there are additional claims
reasonably related to the express claims, the additional claims
may only be raised in the present lawsuit if they accrued within
300 days of Friday, March 26, 1999, which would be May 30, 1998.
See Morgan, 122 S. Ct. at ____, 2002 WL 1270268 at *7-8.
Plaintiff's present allegations of disability discrimination that
predate May 30, 1998 are untimely and will be dismissed.
Plaintiff's allegations regarding discrimination in July,
November, and December 1998 all relate to the denial of worker's

compensation or disability benefits.  Those claims do not reasonably relate to the claims included in the administrative charge and therefore will be dismissed for failure to first exhaust administrative remedies.  Evidence concerning discrimination, work assignments, or medical conditions that occurred prior to January 1999 may only be considered to the extent relevant to the January 1999 applications, for example, as background, as part of plaintiff's relevant medical history showing her condition in 1999, as evidence of information defendant knew about plaintiff's work or medical history, or as evidence of plaintiff's work skills.  See id. at *6-7.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of ruling on defendant's motion for summary judgment are as follows.  Plaintiff was born in 1957.  In 1980, she received a B.S. in metallurgical and materials engineering from the Illinois Institute of Technology.  She worked for U.S. Steel for a year and a half.  In 1989, plaintiff was hired to work as a secretary in defendant's Vascular Lab.  Her last date of employment with defendant was January 11, 1994, when she was taken off of work on her doctor's recommendation because of arm problems.  Defendant treats going on long term disability as a voluntary termination and plaintiff was so informed.

In 1989, 1990, and 1991 employee evaluations, plaintiff was found acceptable, with some individual ratings categories

being rated above average or outstanding. The 1991 evaluation did include a needs improvement for billing patient service. However, in a memorandum dated September 16, 1992, the Director of the Vascular Lab gave plaintiff a written warning for continued poor performance. The warning referred to a "lack of cooperation and poor performance" and not performing her duty of billing patients.[6] On September 18, 1992, plaintiff's immediate supervisor issued a written record of employee occurrences and corrective action reciting a total of three days of unexcused absences during the calendar year.[7] In December 1992, plaintiff was suspended three days for the stated reason of unsatisfactory work performance since September 16, 1992, including delays in preparing dictated reports and poor communication with medical and hospital staff.[8]

In 1992, plaintiff had shoulder surgery for an injury sustained in an automobile accident. Shortly thereafter, the surgeon released her to return to work, but recommended against

---

[6]Plaintiff contends this was an act of retaliation for having filed a worker's compensation claim, but does not cite to evidence supporting this contention.

[7]Plaintiff asserts in response that she was suffering from nerve compression in both her arms, but does not provide evidence linking those injuries to the absences nor does she point to any evidence that she sought medical leave or that she sought to be excused from work on those dates.

[8]Plaintiff asserts that this suspension was in violation of the ADA and worker's compensation law, but does not provide adequate proof of those contentions.

performing overhead filing with her right arm and shoulder. Presently, plaintiff's right shoulder is normal.

Plaintiff had compressed radial nerves in both her arms. Pain in her arms was substantially relieved following surgery and her arm functions substantially improved. Plaintiff's hands sometimes feel numb, but she is able to hold things and pick things up. The numbness has not caused her to injure her hands due to any lack of sensation. Plaintiff still has some weakness and lack of endurance. She testified that she still has difficulty typing, writing, and carrying things. When she performs repetitive fingering, her arms get hot, painful, and cramped.

Plaintiff has a room in her father's house where she does the housekeeping. She does simple cooking for herself and is able to dress herself. Plaintiff is not currently on any medications nor is she receiving any treatment for her arms, but plaintiff contends she has not sought treatment because she lacks health insurance and cannot afford to pay a physician.

In March 1999, a doctor diagnosed plaintiff as having carpal tunnel syndrome and recommended she quit the airport security position she then had. However, plaintiff decided to leave that position because her supervisor would not allow her to work the days she wanted to work.

Plaintiff admits she could perform light work without accommodation. For work involving repetitive use of her arms,

plaintiff believes she would need an accommodation. To perform keyboard work, plaintiff believes she would need voice activated software. For writing, she believes she would need a writing bird.[9]

Plaintiff helps take care of a horse at her father's home, including brushing the horse, giving the horse six to seven pounds of feed at a time, cleaning up some of the manure, filling the hay rack, carrying water, walking the horse, and bathing it. Plaintiff generally does not do this by herself and does not do it everyday or for a full day. Dr. Bernard Bach performed an independent medical examination for plaintiff's worker's compensation claim. In 1996, after viewing a videotape of plaintiff caring for the horse, Dr. Bach opined that the abilities exhibited were inconsistent with plaintiff's subjective statements at her examination and indicated that plaintiff had the ability to work as a secretary.

In January 1999, plaintiff found job listings for patient services coordinator ("PSC") and clerical positions[10] on defendant's website. On January 4, plaintiff submitted an application for those positions. The application included a

---

[9]A writing bird is a trade-marked device that is bird-shaped. A screw holds the pen in place (at the "beak") and the person rests his or her hand on the body of the bird and moves the pen along the paper. Pressing back on the "tail" lifts the pen off the paper.

[10]The listing referred to various clerical positions being available without specifically identifying the positions.

resume. The application materials also included a note from a physician and plaintiff's suggestions for accommodations that might be necessary. Her "accommodation ideas" were a voice activated computer software with headset and microphone; aids to avoid handwriting strain, such as an ergo pen;[11] keeping patient files loosely filed; limited time sitting and with elbow bent; telephone with headset and microphone; cart for heavy patient files; and electronic pencil sharpeners and hole punchers. Plaintiff requested that defendant respond with its accommodation ideas. Plaintiff did not specifically request any testing accommodation. On January 4, plaintiff also wrote to a union officer suggesting they assist her with getting the application processed and also stating she would file a complaint with the EEOC if nothing is accomplished within a reasonable period of time. On January 8, 1999, plaintiff went to the EEOC to complete a charge questionnaire.

On January 22, 1999, Amy, a temporary employee in defendant's Human Resources Department, contacted plaintiff to schedule a test for the PSC position. The test was scheduled for January 26. At that time, plaintiff did not request an accommodation for the test. On January 25, however, plaintiff made a written request for testing accommodations and also requested that the testing be rescheduled. She requested voice activated software, a writing bird, rest breaks, an oral test

_____

[11]The body of an ergo pen is specially shaped.

instead of written, a tape recorder for her responses, and no
stacking of paperwork.  On January 25, plaintiff spoke to
defendant's employee Rhonda who said defendant was working on
adaptations.  Thereafter, no defendant employee contacted
plaintiff to reschedule the test.

For a few weeks in spring 1999 and another few weeks in
October 1999, plaintiff worked as an usher at Keeneland
Racecourse in Kentucky.  No accommodation was necessary for this
position, but there is no evidence it involved substantial use of
arms.  From May 2 to July 23, 1999, plaintiff worked as an x-ray
machine screener at Blue Grass Airport.  No accommodation was
requested for that position.  For a month in late 1999, plaintiff
worked as a stocker at Meijers Grocery.  She did not request an
accommodation.  She quit because Meijers wanted to switch her to
a greeter position.  For a few weeks in December 1999, plaintiff
was a floral sales associate at Garden Ridge Home Decor
Warehouse.  Plaintiff quit that position and went to Florida with
her father.  From February 13 to April 13, 2000, plaintiff was a
security checkpoint person at Miami International Airport.  She
did not request an accommodation.  Plaintiff voluntarily quit
that position.  Plaintiff has not worked since then, though she
continued to apply for positions as late as August 2000.

On the resume submitted with her January 1999 job
application, plaintiff listed that she could type 45 words per
minute.  When deposed, plaintiff admitted that was not true as of

January 1999.  She also listed that her "skills" included
"Calculator/Adding Machine/Keypunch/FAX," though she admitted at
her deposition that her arms limited her to performing those
functions only sporadically.  The resume lists that plaintiff was
the "office/field coordinator" of AKB Partners from 1985 to 1989.
In actuality, plaintiff and her parents were the partners of this
business and plaintiff did AKB work sporadically since 1982.  She
admitted that she listed those dates to make it look like she was
continuously employed and also conceded the job title is
inaccurate.  Plaintiff contends resumes are not expected to be
"fact sheets" and instead are intended to show the person in a
favorable light.

In January 1999, Janine Sinclair-Burns was defendant's
Manager of Recruitment and Assessment.  Her office was in charge
of recruiting, testing, and initial interviewing for all
positions except physicians and nursing.  She is aware of Human
Resources policy as of 1999 and became involved in plaintiff's
job application process.  When a former employee applied to be
rehired, it was defendant's policy to first determine that the
applicant's past performance was satisfactory.  Amy failed to do
that before contacting plaintiff about taking the job test.
After Sinclair-Burns examined plaintiff's personnel file, she
determined plaintiff should not be considered for rehiring
because of the reprimands, suspension, and unsatisfactory
performance appraisals in her file.  Sinclair-Burns also

considered information that, as part of plaintiff's worker's
compensation proceedings, she had been videotaped taking care of
horses and such activity was inconsistent with claims she made in
the worker's compensation case.  On one occasion in January 1999,
Sinclair-Burns heard plaintiff's conversation with the
receptionist in her office and found plaintiff's tone and
demeanor to be aggressive and inconsistent with that expected of
a job applicant.  Sinclair-Burns was also aware that the PSC
position required keyboarding and paper handling whereas
plaintiff had stated she could not perform such functions without
accommodations that Sinclair-Burns did not believe could be done.

Sinclair-Burns had ultimate authority for the decision
not to bring plaintiff in for testing.  She describes the reasons
as follows:

> Based on Ms. Alek's past performance at
> University of Chicago Hospitals, our belief that
> she was not being honest about the symptoms of
> her alleged work related injury, her actions when
> dealing with my staff, and the fact that
> keyboarding and lifting papers and patient files
> are essential job functions of the position of
> Patient Services Coordinator, the office of
> Recruitment and Assessment, under my management,
> decided not to hire Ms. Alek, and therefore, not
> to proceed with any practical testing of her.
> Each of the reasons that Ms. Alek was not hired,
> by itself, was sufficient reason for her not to
> be hired, and the absence of one or more reasons
> would not have changed my decision to reject Ms.
> Alek for hiring.

Additionally, Sinclair-Burns states that, had she then known about the false information in plaintiff's resume, that would have been another sufficient reason not to hire plaintiff.

Barbara DeMartin is currently defendant's Director of Clinical Systems and also held that position in January 1999. She is responsible for many of defendant's computer operations. She is familiar with voice activated and voice recognition software and has examined the question of using it with defendant's software and computer systems. Both in 1999 and presently, the available software was/is not compatible with defendant's system. According to DeMartin:

> 7. In order for voice activated or recognition software to be used with the Hospitals' regular systems, custom programming, by outside consultants, would be required, which would modify all of the Hospitals' computer programs and disrupt all current systems.
> 8. Custom programming of the Hospitals' system would be extensively costly, amounting to many thousands of dollars, and would still not make the voice activated/recognition software usable with the Hospitals' systems and software.
> 9. In my opinion as Director of Clinical Systems, voice recognition or voice activated software cannot currently be adapted for use by Patient Services Coordinators or in the patient care areas of the Hospitals, or for use in testing applicants for typing skills.

Defendant contends it is entitled to summary judgment on the remaining claims because plaintiff cannot show that she is a person with a disability as required to qualify for the ADA's protections. Alternatively, defendant contends that the accommodations requested by plaintiff were not reasonable and

that it had legitimate, nondiscriminatory reasons for not hiring plaintiff.

To qualify for protection under the ADA, a person must be "a qualified individual with a disability." 42 U.S.C. § 12112(a); Dvorak v. Mostardi Platt Associates, Inc., 289 F.3d 479, 483-84 (7th Cir. 2002); Winfrey v. City of Chicago, 259 F.3d 610, 614 100 (7th Cir. 2001); Moore v. J.B. Hunt Transport, Inc., 221 F.3d 944, 950 (7th Cir. 2000); Nowak v. St. Rita High School, 142 F.3d 999, 1002 (7th Cir. 1998). The burden is on plaintiff to show that she is a qualified individual with a disability. Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 805-06 (1999); Winfrey, 259 F.3d at 614; Moore, 221 F.3d at 950; Nowak, 142 F.3d at 1002. A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Winfrey, 259 F.3d at 614; Nowak, 142 F.3d at 1002. The ADA defines a "disability" as including "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A); 29 C.F.R. §§ 1630.2(g)-(k); Dvorak, 289 F.3d at 483; Gorbitz v. Corvilla, Inc., 196 F.3d 879, 882 (7th Cir. 1999). A "disability" is also defined as "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(C); 29 C.F.R.

§ 1630.2(l); <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 489 (1999); <u>Dvorak</u>, 289 F.3d at 483; <u>Wright v. Illinois Department of Corrections</u>, 204 F.3d 727, 730-31 (7th Cir. 2000).

The precise nature of plaintiff's claimed disability is unclear.  She does claim an impairment to her arms, but it is unclear if that impairment is claimed to interfere with the major life activity of work, claimed to interfere with the major life activity of manual tasks, or if she instead claims that she was regarded as being disabled.  However, it need not be decided whether plaintiff has a disability since, even assuming she does have a disability, her claims are subject to dismissal on the alternative grounds.

Here, defendant has articulated and provided evidence of a nondiscriminatory reason for not rehiring plaintiff. Therefore, plaintiff has the burden of showing that the proffered grounds for not rehiring her were a pretext for discrimination, <u>i.e.</u>, she continues to have the ultimate burden of proving discrimination.  <u>Dvorak</u>, 289 F.3d at 485.  To show that defendant's stated grounds are pretextual, plaintiff generally must present either direct evidence that her disability was a motivating factor in defendant's decision or present a material factual dispute as to the sincerity of the proffered reasons. <u>Freeman v. Madison Metropolitan School District</u>, 231 F.3d 374, 379 (7th Cir. 2000); <u>Collier v. Budd Co.</u>, 66 F.3d 886, 892 (7th Cir. 1995) (quoting <u>Colosi v. Electri-Flex Co.</u>, 965 F.2d 500, 502

(7th Cir. 1992)). As to the latter, it must be shown (a) that
the proffered reason had no basis in fact, (b) that the proffered
reason did not actually motivate the decision, or (c) that the
reason was an insufficient reason to motivate the adverse action.
Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 2002 WL 959511
*3 (7th Cir. May 10, 2002); Lesch v. Crown Cork & Seal Co.,
282 F.3d 467, 473 (7th Cir. 2002); Freeman, 231 F.3d at 379;
Collier, 66 F.3d at 892 (quoting Cliff v. Board of School
Commissioners of City of Indianapolis, Ind., 42 F.3d 403, 412
(7th Cir. 1994)).

Plaintiff does not present sufficient evidence to raise a
genuine factual dispute as to Sinclair-Burns' stated reasons for
not rehiring plaintiff. It is undisputed that plaintiff's
employment records contained past disciplinary problems and
negative evaluations. It is undisputed that defendant considers
the past employment records when an applicant seeks to be rehired
and there is nothing to indicate that the negative aspects of
plaintiff's employment record would not have been a sufficient
ground to preclude her rehiring. Plaintiff disputes whether the
past discipline was justified, but does not provide sufficient
evidence to support a genuine factual dispute on that issue. But
even if the past discipline and evaluations were not justified,
there is no evidence that Sinclair-Burns was aware of that. Even
if Sinclair-Burns incorrectly assumed the employment records were
accurate and justified, she was still relying on a ground other

than disability discrimination in declining to rehire plaintiff. Defendant has shown a legitimate nondiscriminatory ground for not rehiring plaintiff and plaintiff has not raised a genuine factual dispute that this ground was pretext. Defendant is entitled to summary judgment on the failure to rehire claim.

Plaintiff also claims that she was denied an accommodation in the testing for the position. Since plaintiff did not actually proceed far enough in the application process to be tested, this claim is without merit. Defendant is entitled to summary judgment on this claim as well.

Since undisputed facts support the granting of summary judgment in defendant's favor, plaintiff would not be entitled to summary judgment in her favor. Plaintiff's motion for summary judgment will be denied.

Plaintiff also seeks reconsideration of an order requiring her to pay $430.00 in Fed. R. Civ. P. 37(a)(4) sanctions. See Alek v. University of Chicago Hospitals, 2001 WL 1543518 (N.D. Ill. Nov. 30, 2001). Those sanctions related to defendant's successful motion to compel the production of certain tax documents, the production of certain documents related to employment and business partnerships, and to answer questions on those subjects. See id. at *3. Plaintiff's motion for reconsideration will be denied.[12] The sanctions awarded were

---

[12]Plaintiff's motion generally does not address the issues underlying the sanctions that were imposed. Plaintiff

narrow. They were limited to reasonable fees for drafting the motion to compel, expenses related to filing the motion, and a court reporter's fee for an additional day of sitting at plaintiff's deposition. Plaintiff did not voluntarily provide the documents and testimony in a timely manner. The sanctions imposed are reasonable and arise from plaintiff's failure to voluntarily provide the information.

IT IS THEREFORE ORDERED that plaintiff's motions (a) for relief from judgment or order filed 11/29/2001 [59-1] (b) to quash defendant's memorandum of law in support of its motion for summary judgment [67-1] and (c) for summary judgment [60-1] are denied. Defendant's motion to strike various documents filed by plaintiff on 2/20/02 [73-1] is denied. Defendant's motion for summary judgment [64-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JUNE 14 , 2002

---

generally questions immaterial factual statements in the opinion that concerned issues on which sanctions were not imposed.